IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 4, 2014

**STATE OF TENNESSEE v. LASHAY NICOLE SCRUGGS**

**Appeal from the Circuit Court for Fayette County**
**No. 11-CR-182    J. Weber McCraw, Judge**

_____

**No. W2014-00091-CCA-R3-CD  -  Filed December 30, 2014**

_____

Lashay Nicole Scruggs ("the Defendant") appeals from the trial court's denial of judicial diversion. On appeal, the Defendant argues that the trial court abused its discretion by (1) placing heavy emphasis on charges listed as "pending" in the pre-sentence report but that were actually disposed of prior to the sentencing hearing; (2) placing emphasis on the presence of marijuana in the Defendant's system when marijuana use was not an element of vehicular manslaughter as charged in this case; and (3) placing emphasis on the need to deter others from driving irresponsibly when there was no evidence of such a need in the record. Upon review, we find that the trial court did not abuse its discretion and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

Christine Cane, Memphis, Tennessee (at trial) and Kari I. Weber, Assistant Public Defender, Somerville, Tennessee (at trial and on appeal), for the appellant, Lashay Nicole Scruggs.

Robert E. Cooper, Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Mike Dunavant, District Attorney General; and Matt Hooper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On October 31, 2013, Lashay Nicole Scruggs ("the Defendant") pleaded guilty to two counts of vehicular homicide, both C felonies.[1] The facts underlying the convictions, as recited by the State at the entry of the guilty plea, are not in dispute.

At approximately 5:55 p.m. on August 5, 2010, Gary and Eric Turner ("the victims") were driving northbound on Highway 76 in Fayette County. It had been raining "fairly hard" throughout the day, including in the minutes leading up to the accident. The Defendant was driving southbound on the same highway in an AutoZone delivery van[2] when she hydroplaned, lost control of the vehicle, and crossed over the line into oncoming traffic. The Defendant hit the victims' vehicle head-on. Both victims died as a result of the injuries they sustained in the accident.

The AutoZone van was equipped with a crash data recorder, commonly referred to as a "black box," which records and stores data about the vehicle for the five seconds prior to impact. State troopers who responded to the scene secured the black box. When the data was evaluated, it showed that the van had been traveling at 82 miles per hour in the five seconds before the accident.[3]

Witnesses at the scene did not observe the Defendant to appear to be intoxicated. However, the Defendant's blood was drawn, and it tested positive for a small amount of marijuana. Given the amount of marijuana found in the Defendant's system, the State conceded that it would be difficult to prove that she was intoxicated at the time of the crash. Consequently, the Defendant was indicted for vehicular homicide by recklessness as opposed to vehicular homicide by intoxication.

The State announced that the parties did not have an agreement as to sentencing and would submit sentencing to the trial court's discretion. The Defendant stipulated as to the factual basis and informed the court that she would be seeking judicial diversion and alternative sentencing. She then entered guilty pleas to both counts of vehicular homicide.

---

[1] See Tenn. Code Ann. § 39-13-213(a)(1), (b)(1) (2010).

[2] At the time of the incident, the Defendant was employed by AutoZone as a delivery van driver.

[3] According to the pre-sentence report, the post speed limit was 55 miles per hour.

At the sentencing hearing on December 5, 2013, Arbedella Pettigrew testified that Gary Turner was her brother and Eric Turner was her son. She stated that, when the accident occurred, the victims were returning home after having helped an individual load chairs onto the back of his truck. She testified that she has to pass the scene of the accident every day and it is very difficult for her. She stated that she wanted the Defendant to be incarcerated.

The Defendant testified that she was currently 24 years old and was 21 years old at the time of the incident. On the day of the accident, the Defendant was coming to the end of a 12-hour shift driving a delivery van for AutoZone. She stated that she was driving normally but not paying attention to her speed when she hydroplaned and collided with the victims' car. After the accident, she was told that the treads on the van's tires were low, but she did not know that information at the time of the incident. She said that she could not control what happened and she felt that she should not be punished for something she could not control. She testified, "I'm not saying that I wasn't wrong for speeding, but at the same time I have to deal with this every day, too. I ask God, 'Why did I have to go through this? Why did I have to be a part of taking somebody's life?'" She stated that she received injuries from the accident.

The Defendant testified that she had two daughters, a five year old and a two month old, and she was employed by Newberry Logistics. She stated that she always tried to maintain employment and that she had never been convicted of a felony or a Class A misdemeanor. She also confirmed that she had never been granted judicial diversion in any jurisdiction.

Michelle Prewitt, the Defendant's mother, testified that the Defendant called her from the scene of the accident, crying. Since the accident, the Defendant has been mentally and emotionally disturbed. She cries frequently and says that she is sorry for taking someone's life.

After considering the nature of the criminal conduct involved, enhancing and mitigating factors, and the probation considerations, the trial court sentenced the Defendant to concurrent terms of four years at 30%, which the court suspended to supervised probation. In doing so, the trial court noted that the Defendant had to live with the heavy burden that she caused the death of two individuals.

The trial court then turned to the issue of whether to grant judicial diversion.[4] As to

---

[4] At the beginning of the hearing, the trial court noted that it had not received the required certificate from the Tennessee Bureau of Investigation ("TBI"). It stated that it could not make a final decision regarding diversion before the TBI certificate was returned. However, after the close of proof, the trial court

the Defendant's amenability for correction, the trial court found that she would be amenable but stated that it had some hesitation in saying so. Relying on the pre-sentence report, dated two days before the hearing, the trial court expressed concern that, subsequent to the accident that caused the victims' death, the Defendant had received citations for traffic offenses–two in September 2012, which were dismissed, and two in September 2011, which were still pending.[5]

As to the circumstances of the offense, the court noted that the situation was "horrible" because two people lost their lives. As to the Defendant's social history, the trial court stated that it was concerned about her marijuana use. While there may not have been enough marijuana in her system to show that she was intoxicated at the time of the accident, the test results showed that the Defendant had used an illegal substance at some point. The court considered the Defendant's mental and physical health and stated that, other than the grief she experienced for causing the victims' deaths, there was nothing of note. As to the deterrence to the accused and others, the court stated that there was a need to send a message to deter others from speeding and driving irresponsibly. As to whether judicial diversion would serve the interests of the public, the court stated that the legislature had addressed the public interest by determining that diversion can be an appropriate alternative sentence in these circumstances.

The court stated that it placed a "heavy emphasis" on the Defendant's amenability to correction in light of the fact that she continued to receive citations for traffic violations after her driving caused the victims' deaths, and some of those citations were pending in other courts. The court also noted that it was concerned about the presence of marijuana in the Defendant's system. Focusing on those factors, the trial court denied judicial diversion.

At the conclusion of the hearing, defense counsel expressed confusion about the September 2011 charges, stating that the Defendant believed she did not have any pending charges. However, defense counsel agreed that the pre-sentence report indicated that charges were still pending, and the court informed the parties that it understood the pre-sentence report to say there were pending charges against the Defendant.

Following the return of the TBI certificate, the trial court entered the judgments of

_____

proceeded on the assumption that the TBI certificate would show the Defendant was eligible for diversion. The trial court announced its judgment from the bench and stated that, once the TBI certificate was returned, a final order would be entered.

[5] Specifically, in September 2012, the Defendant was cited for driving while license was suspended/revoked/cancelled and disregarding a red light. In September 2011, she was cited for driving while license was suspended/revoked/cancelled and violation of financial responsibility law.

conviction on December 17, 2013. This timely appeal followed. On February 11, 2014, after an appeal was filed with this Court, the parties entered into a stipulation in the trial court that the September 2011 charges of driving on a suspended, revoked, or cancelled licence and violation of financial responsibility law, which appeared on the pre-sentence report, were disposed of prior to the December 5, 2013, sentencing hearing. The disposition of those charges was neither a conviction nor diversion, and the charges no longer appear in the public records of Shelby County General Sessions Clerk's Office.

## Analysis

On appeal, the Defendant challenges the trial court's denial of judicial diversion, arguing that the trial court abused its discretion by (1) placing heavy emphasis on charges listed as "pending" in the pre-sentence report but that were actually disposed of prior to the sentencing hearing; (2) placing emphasis on the presence of marijuana in the Defendant's system when marijuana use was not an element of vehicular manslaughter as charged in this case; and (3) placing emphasis on the need to deter others from driving irresponsibly when there was no evidence of such a need in the record. The State argues that the trial court considered all the required factors for judicial diversion and it did not abuse its discretion.

Tennessee Code Annotated section 40-35-313 governs judicial diversion procedure. Upon a finding of guilt, the trial court may place a qualified defendant[6] on probation without entering a judgment of conviction. Tenn. Code Ann. § 40-35-313(a)(1)(A) (2010). Once the defendant successfully completes probation, the charge will be dismissed. Tenn. Code Ann. § 40-35-313(a)(2) (2010). Judicial diversion is similar to pretrial diversion; but judicial diversion follows a determination of guilt, and the judge, as opposed to the prosecutor, makes the decision whether to grant judicial diversion. State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

---

[6] At the time of the offense, the term "qualified defendant" was defined as a defendant who:

> *(a)* Is found guilty of or pleads guilty or nolo contendre to the offense for which deferral of further proceedings is sought;
>
> *(b)* Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 [knowing abuse, neglect, or exploitation of an adult] or § 71-6-119 [knowing physical abuse or gross neglect of an impaired adult], or a Class A or Class B felony; and
>
> *(c)* Has not previously been convicted of a felony or a Class A misdemeanor.

Tenn. Code Ann. § 40-35-313(a)(1)(B)(I) (2010).

For a defendant to be eligible for judicial diversion, the record must reflect that the accused:

> (a) was convicted of a misdemeanor, which is punishable by imprisonment, or a Class C, D, or E felony, (b) had never been convicted of a felony or a Class A misdemeanor, and (c) consents to the deferment of the proceedings and the imposition of probation for up to the maximum length of punishment for the crime in question.

State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). However, satisfying these criteria does not presumptively entitle a defendant to judicial diversion, but simply allows the trial court to grant diversion in appropriate cases. Id. The defendant bears the burden of proving that he or she is a suitable candidate for judicial diversion. State v. Faith Renea Irwin Gibson, No. E2007-01990-CCA-R3-CD, 2009 WL 1034770, at *4 (Tenn. Crim. App. Apr. 17, 2009) (citing State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999); State v. Baxter, 868 S.W.2d 679, 681 (Tenn. Crim. App. 1993)).

In determining whether to grant judicial diversion to a qualified defendant, the trial court must consider the following factors:

> (a) the accused's amenability to correction; (b) the circumstances of the offense; (c) the accused's criminal record; (d) the accused's social history; (e) the accused's physical and mental health; (f) the deterrence value to the accused as well as others; and (g) whether judicial diversion will serve the interests of the public as well as the accused.

State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); Parker, 932 S.W.2d at 958. In addition to the Electroplating factors, the trial court may consider the following factors in making its decision: "[the defendant's] attitude, behavior since arrest, prior record, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility[,] and attitude of law enforcement." State v. Anthony Adinolfi, No. E2013-01286-CCA-R3-CD, 2014 WL 2532335, at *2 (Tenn. Crim. App. June 2, 2014) (quoting State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993)) (internal quotation marks omitted). The record must reflect that the trial court weighed all the Electroplating factors against each other, and the trial court must give an explanation of its ruling on the record. State v. King, 432 S.W.3d 316, 326 (Tenn. 2014); Electroplating, 990 S.W.2d at 229.

When the record reflects that the trial court considered the Electroplating factors, identified which factors were relevant, and explained its ruling on the record, this Court must

apply a presumption of reasonableness and review the judgment for an abuse of discretion. King, 432, S.W.3d at 319, 327. We will affirm the trial court's judgment "so long as there is any substantial evidence to support the trial court's decision." Id. at 327. However, if the trial court fails to consider and weigh the relevant factors, the presumption of reasonableness does not apply, and this Court may either conduct a *de novo* review or remand the issue for reconsideration. Id. at 327-28.

In this case, the record shows that the trial court methodically considered and weighed each of the Electroplating factors, identified the factors weighing against granting judicial diversion, and explained the basis of its ruling on the record. Therefore, we apply a presumption of reasonableness and will affirm the judgment if there is any substantial evidence to support it. See id. at 327.

*Traffic Offenses in Pre-Sentence Report*

When considering the Defendant's amenability to correction, the trial court noted that the pre-sentence report showed that, subsequent to the accident that caused the victims' death, the Defendant had received citations for traffic offenses–two in September 2012, which were dismissed, and two in September 2011, which were still pending. The trial court expressed concern that the Defendant continued to receive citations for driving offenses after her driving caused the victims' deaths.

On appeal, the Defendant argues that, since the pre-sentence report was incorrect and the September 2011 charges were actually disposed of prior to the sentencing hearing, the trial court abused its discretion by considering the charges as pending and placing heavy emphasis on those charges. Additionally, the Defendant argues that the trial court abused its discretion by relying on the September 2012 charges, which had been dismissed, as a basis for denying diversion. The State argues that the Defendant bore the burden of showing the trial court that she was a suitable candidate for judicial diversion, and since the Defendant did not present any evidence that the pre-sentence report was incorrect until after the sentencing hearing, the trial court did not abuse its discretion by considering the September 2011 charges as pending. Additionally, the State argues that, even though those charges were disposed of without convictions, the fact still remains that the Defendant was cited for traffic violations after her driving caused the death of two people. Therefore, the State argues, the trial court did not abuse its discretion.

As noted above, the Defendant bears the burden of proving that she is a suitable candidate for judicial diversion. See Faith Renea Irwin Gibson, 2009 WL 1034770, at *4. While the record on appeal reflects that the September 2011 charges were disposed of prior to the sentencing hearing, the Defendant did not provide that information to the trial court

until February 11, 2014–more than two months after the sentencing hearing and more than one month after the judgments of conviction were entered. In rendering a judgment, a trial court cannot rely on evidence that is not presented. Here, the pre-sentence report showed that the September 2011 charges were still pending at the time of the hearing. The Defendant failed to produce any evidence to the contrary before the trial court entered its judgment. Therefore, we find that the trial court did not abuse its discretion when it placed heavy emphasis on the "pending" charges to deny judicial diversion. Regarding the September 2012 charges, we do not think it was error for the trial court to consider these charges in order to determine the Defendant's amenability to correction, but if it was, any error would be harmless.

*Marijuana in Blood Screen*

Second, the Defendant argues that the trial court abused its discretion by considering the presence of marijuana in the Defendant's blood screen as a basis for denying judicial diversion. Since marijuana use was not an element of vehicular homicide as charged in this case, the Defendant contends that it was improper for the trial court to consider this evidence. The State argues that the trial court did not abuse its discretion.

The Defendant correctly states that marijuana use is not an element of vehicular homicide as charged in this case. However, we note that the trial court considered the presence of marijuana in the Defendant's blood screen as evidence of the Defendant's social history. Social history is a broad concept that, by its nature, encompasses more conduct than that the conduct underlying the charged offense. Additionally, the trial court may consider evidence of current drug use to reach a decision about judicial diversion. See Anthony Adinolfi, 2014 WL 2532335, at *2. The evidence showed there was marijuana, an illegal substance, in the Defendant's system, and the trial court stated it was concerned by that evidence. We cannot say the trial court abused its discretion in relying on the Defendant's social history of illegal substance use in denying judicial diversion.

*Deterrence to Others*

Finally, the Defendant argues that the trial court abused its discretion by stating that there was a need to deter others from irresponsible driving and using that as a basis to deny judicial diversion. The Defendant contends that there was nothing in the record to support the trial court's finding that others needed to be deterred from irresponsible driving. The State argues that it was reasonable for a trial court that routinely presides over driving-related cases to take into consideration the need to deter the public from reckless driving and the introduction of statistical analysis was unnecessary. Additionally, the State notes that the trial court did not place particular emphasis on the deterrence factor but merely stated that it weighed against granting judicial diversion.

The trial court is required to weigh each of the Electroplating factors when making a determination about judicial diversion. See King, 432 S.W.3d at 326. After considering each factor, the trial court identifies which factors are relevant, and explains its ruling based on the relevant factors. Id. at 327. In this case, the trial court considered the deterrence factor as required and stated, "[T]he Court does believe that there is a need to send a deterrent message out to others about safe driving, high speed driving, irresponsible driving. The Court believes that's also–always something the Court needs to address and it appears to be appropriate here." However, when the trial court explained the basis of its ruling on the record, it did not identify deterrence to others as a factor upon which it relied in denying judicial diversion. Instead, it relied on the driving charges the Defendant received subsequent to the accident and the presence of marijuana in her system. It does not appear from the record that the trial court placed much emphasis on the need to deter others from reckless driving when it denied judicial diversion. Moreover, since there is substantial evidence in the record to support the trial court's ruling, we cannot say the trial court abused its discretion.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE